**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LESTER SHREFFLER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:21-cv-1189** |
| | § | |
| **EK REAL ESTATE SERVICES OF NY,** | § | |
| **LLC, AN AFFILIATE OF EASYKNOCK,** | § | |
| **INC., EASYKNOCK, INC., AND** | § | |
| **LENDINGONE, LLC,** | § | |
| *Defendants.* | § | |

## ORIGINAL COMPLAINT

Plaintiff **LESTER SHREFFLER** ("**SHREFFLER**") files this *Original Complaint* against the unauthorized, predatory lending tactics of Defendants **EK REAL ESTATE SERVICES, OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, LLC**, and seeks redress for, among other causes, multiple violations of the Truth In Lending Act, 15 U.S.C. § 1601, *et seq.* (hereinafter, "TILA") and Federal Reserve Board of Regulation Z, 12 C.F.R. § 226 promulgated pursuant thereto, and multiple violations of Texas Finance Code, including §§ 305.001, *et seq.*, and §§ 341.001, *et seq.*, and in support thereof would show the Court as follows:

## PARTIES

1.     Plaintiff **LESTER SHREFFLER** ("**SHREFFLER**") is a resident of Collin County, Texas and is the person who owned the real property at issue in this suit.

2.     Defendant **EK REAL ESTATE SERVICES OF NY, LLC, an Affiliate of EASYKNOCK, INC. ("EK REAL ESTATE"),** is a foreign limited liability company organized and existing under the laws of the State of Delaware but, as of September 27, 2019, is

authorized to do business in the State of Texas. **EK REAL ESTATE** conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **EK REAL ESTATE's** principal office is located at 79 Madison Avenue, 5th Floor, New York, NY 10016, and it may be served with a copy of this *Original Complaint* by and through its registered agent for service, Corporation Services Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Travis County, Texas 78701.

3.      Defendant **EASYKNOCK, INC. ("EASYKNOCK")** is a foreign corporation organized and existing under the laws of Delaware whose principal office is 215 Park Avenue South, Suite 1713, New York, NY 10003. **EASYKNOCK** is the sole member of Defendant **EK REAL ESTATE**. **EASYKNOCK** regularly engages in business in Texas without registering with the Texas Secretary of State for the right to do business in Texas, including in connection with the transactions at issue in this lawsuit; thus, **EASYKNOCK** may be served through the Texas Secretary of State pursuant to FED. R. CIV. P. 4(h)(1)(A) and TEX. CIV. PRAC. & REM. CODE § 17.044, via US Mail: Service of Process, Secretary of State, P.O. Box 12079, Austin, Texas 78711-2079, or via Overnight Delivery: Service of Process, Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701.

4.      Defendant **LENDINGONE, LLC ("LENDINGONE")** is a foreign corporation organized and existing under the laws of the State of Delaware but, as of July 2, 2020, is authorized to do business in the State of Texas. **LENDINGONE** conducted business in this state before that time, including in connection with the transactions at issue in this lawsuit, without properly being authorized to do so. **LENDINGONE's** principal office is located at 901 Northwest 51st Street, Suite 150, Boca Raton, FL 33431, and it may be served with a copy of

this *Original Complaint* by serving its registered agent for service Registered Agents, Inc., 5900 Balcones Drive, Suite 100, Austin, Travis County, Texas 78731.

## JURISDICTION

5.      Jurisdiction is proper in this Court for the violations of the Truth-In-Lending Act pursuant to 15 U.S.C. §§ 1601, *et seq.*, as well as 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) because this action is between citizens of different states and the amount in controversy exceeds $75,000.00, excluding interest and costs. This Court has jurisdiction over the Texas state law claims under principles of pendent and ancillary jurisdiction.

6.      This Court has general personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant has purposefully availed itself of the benefits of conducting business in Texas, each Defendant's contacts with Texas are continuous and systematic, and each Defendant can be considered essentially at home in Texas. This Court also has specific personal jurisdiction over Defendants **EK REAL ESTATE**, **EASYKNOCK**, and **LENDINGONE** under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE §§ 17.041, *et seq.*, because, as described in this Complaint, each Defendant purposefully directed its wrongful activities at Plaintiff **SHREFFLER,** a resident of the forum, each Defendant's conduct caused, and Plaintiff **SHREFFLER's** suit seeks redress for, harm caused by each of Defendant's wrongful actions which either took place inside of the forum and/or were purposefully directed at Plaintiff **SHREFFLER** in the forum.

**VENUE**

7.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) and Tex. Fin. Code § 349.401 since this case arises from a dispute concerning real property situated in Tarrant County, Texas and because Tarrant County, Texas is a judicial district in which the underlying transactions and a substantial part of the events or omissions giving rise to the claims occurred. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because, for venue purposes, each Defendant is deemed to reside in Tarrant County, Texas since each Defendant is subject to the court's personal jurisdiction in this judicial district with respect to this civil action in question and, for venue purposes, all Defendants are deemed residents of the State in which the district is located.

**FACTS**

8.      On or about July 19, 2007, Plaintiff **SHREFFLER** purchased a house and the real property located at 1313 Woodway Drive, Hurst, Texas 76053 ("the Property"). *(See Exhibit "A" – Warranty Deed with Vendor's Lien to* **SHREFFLER** *attached hereto and incorporated herein for all purposes.)* **SHREFFLER** resided at the Property with his daughter continuously from that date until August 2020. At the time of the transactions at issue in this dispute, the Property was designated as **SHREFFLER's** residential homestead.

9.      In the Fall of 2018, **SHREFFLER** was being inundated with bills and he needed funding to pay for his daughter's college expenses. To help finance these expenses, **SHREFFLER** searched for options to refinance his home and/or obtain a conventional loan, but was ultimately denied due to creditworthiness.  As a single father with full custody of his then-minor daughter, **SHREFFLER** had no savings or other income to support himself and his daughter and was desperate for a quick solution to his financial hardships. At that time,

4

**SHREFFLER** was unable to borrow money from a conventional financial institution because of poor credit, inadequate income, and the Property being his homestead.

10.    In late 2018, **SHREFFLER** conducted an Internet search for potential home equity lenders or options to refinance his home. Through this online search for a home equity lender, **SHREFFLER** found an alternative lender on the Internet, Defendant **EASYKNOCK**, the sole Member of **EK REAL ESTATE**. Upon information and belief, **EASYKNOCK** used online target ad words to increase its visibility on searches for home equity lenders.

11.    As part of a follow-up with this potential home equity lender, **EASYKNOCK** indicated to **SHREFFLER** that it would loan him money in exchange for the security of a Deed to the Property and the execution of a lease agreement.

12.    In their online advertising and through an email on October 12, 2018, Defendants **EASYKNOCK** and **EK REAL ESTATE's** assured **SHREFFLER** that he could "release" the home equity in his Property and either repay the "loan" and gain back his homestead Property or sell the Property during his lease and "unlock" additional equity in his Property.

13.    This type of transaction is known as a "Sale-Leaseback," and it is highly disfavored in Texas, particularly when the transaction involves a Texas citizen's homestead. **EASYKNOCK** represented that the lease agreement would include an option to pay off **EASYKNOCK**'s loan, which would be secured by a portion of **SHREFFLER's** equity in his Property. **EASYKNOCK** also promised **SHREFFLER** that he would retain the remaining equity in his Property—the equity difference between the Property's total market value of his Property and the amount of **EASYKNOCK's** secured funding.

14.     All communications concerning the transaction between **SHREFFLER** were with **EASYKNOCK** and its employees or representatives. All material sent to **SHREFFLER** was sent by **EASYKNOCK,** the sole Member to Defendant **EK REAL ESTATE**.

15.     In their online advertising and during several calls and email communications in October and November 2018 with members of **EASYKNOCK's** so-called "Transaction Team," Defendants **EASYKNOCK** and **EK REAL ESTATE's** assured **SHREFFLER** that he could "access" or "release" the home equity in his Property and either repay the "loan" and gain back the secured portion of the equity in his homestead Property or sell the Property during his lease and "unlock" his additional retained equity in his Property. **SHREFFLER** understood from these communications that **EASYKNOCK's** program would operate as a loan secured by equivalent equity in his Property. **EASYKNOCK** proposed cashing out only a portion of his equity in the Property (about 68% of his Property's value), not the full value of the home. **EASYKNOCK** told him that he could pay off the amount **EASYKNOCK** funded in exchange for a release of **EASYKNOCK's** secured interest in that portion of the equity of his Property. In the interim, **SHREFFLER** was told he would continue to live in his home and make monthly payments to **EASYKNOCK** just like he would for any traditional home equity loan. **SHREFFLER** only ever intended the transaction to be a home equity loan, not a complete sale of his rights and interest in his homestead.

16.     **EASYKNOCK's** solicitations included the term "#ReLease Equity" and referred to their program as a method to "access" or "release" "home equity"—language strongly indicating a home equity loan. Further, **EASYKNOCK's** solicitations and program materials from **EASYKNOCK's** so-called "Transaction Team" described that **SHREFFLER** would need

to complete a credit and criminal background check, provide certain income documents (recent pay stubs and 3 months of bank statements) as part of **EASYKNOCK's** "credit authorization."

17.     Despite not being a qualified lender in Texas at the time of the "Sale-Leaseback" transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** represented to **SHREFFLER** that they were going to "release" a portion of **SHREFFLER's** equity in his property to fund what **EASYKNOCK** described as its Secured Funding Amount, secured by a pledge of a portion of the equity in his home.  **EASYKNOCK** further represented to **SHREFFLER** that if he ever decided to pay off this Secured Funding Amount, he would regain control of the secured equity and once again be a 100% owner of the equity in his Property.  Clearly, Defendants **EK REAL ESTATE** and **EASYKNOCK** recognized that the transaction made the basis of this suit was a "loan" requiring credit and income authorization and that they were acting as "lenders."

18.     None of Defendants **LENDINGONE, EASYKNOCK,** or **EK REAL ESTATE** is a qualified lender in Texas with the Texas Office of Consumer Credit Commission (OCCC). At the time of these transactions, none of the Defendants were even registered to conduct any type of business in Texas—despite them regularly doing so.

19.     To induce **SHREFFLER** to close on their "Sale-Leaseback" loan transaction, Defendants **EASYKNOCK** and **EK REAL ESTATE** provided **SHREFFLER** with examples of how the transaction would work.  They represented to **SHREFFLER** that he could "access" or "release" some of the equity in his Property, continue to live in his home, and retain a percentage of the equity in his Property.  They also represented that if/when **SHREFFLER** was ready to sell the Property, he could choose his own realtor.  On October 12, 2018, Daniel Poindexter, an agent and representative of Defendants **EASYKNOCK** and **EK REAL**

**ESTATE**, sent **SHREFFLER** an email with the following illustration of what **SHREFFLER** could expect if he agreed to **EASYKNOCK** and **EK REAL ESTATE**'s terms:

| SELL AND STAY OFFER ILLUSTRATION | | |
|---|---|---|
| Current Home Value: | $250,000 (est.) | |
| Current Mortgage (and any liens): | $112,000 (est.) | |
| Current Home Equity: | $138,000 (est.) | |
| Proposed Funding Percentage: | 68.0% | |

| | Step 1 - Sell | | |
|---|---|---|---|
| **Release your home equity.** ↓ | EasyKnock secures funding for property | $170,000 | |
| | Mortgage Payoff: | -$112,000 | (Including any liens) |
| | Processing Fee: | -$5,000 | |
| | Title Insurance: | -$3,750 | |
| | Closing Costs: | -$3,000 | |
| | First Month's Rent: | -$2,175 | |
| | Tax Escrow: | -$5,500 | |
| | Estimated funding provided to you as cash at closing | $38,575 | (Estimate) |

| | Step 2 - Lease | | |
|---|---|---|---|
| **Stay in your home.** ↓ | You retain a stake (called "Option Value") in the property | $80,000 | (Option Sellout Price)* |
| | You continue living in your home and rent at a set rate | $2,175 | (Monthly Rent)* |

| | Option 1 - Repurchase Home | | |
|---|---|---|---|
| **Keep your home.** ↓ | You decide to re-establish 100% ownership (within three years) | | |
| | EasyKnock sells your house back to you at the funding amount (plus 5%) | $178,500 | (Repurchase Price)* |

| | Option 2 - Full Home Value Release | | |
|---|---|---|---|
| **Or, move when you are ready.** | Your property is listed with a realtor of your choice at full market value | $262,500 | (Sales Price)* |
| | Your Repurchase Price is paid off | -$178,500 | (Repurchase Price)* |
| | You receive your remaining property equity | $84,000 | (Realized Option Value)* |

20.     To further induce **SHREFFLER** to enter into the transaction, **EASYKNOCK** and **EK REAL ESTATE** led **SHREFFLER** to believe that he was receiving a home equity loan and that he would retain a stake in the ownership of his home.  As shown in the illustration above, **EASYKNOCK** and **EK REAL ESTATE** utilized phrases such as "proposed funding,"

"secures funding," "[r]elease your home equity," and "retain a stake" to mislead **SHREFFLER** to believe that he was obtaining a loan—not that he was completely giving up all right and title to his residential homestead.

21.     **EASYKNOCK** and **EK REAL ESTATE** further represented that **SHREFFLER** would maintain a 32% share of the equity in his Property and that **SHREFFLER** would be entitled to another $84,000.00 in cash from his remaining equity in the Property.

22.     **SHREFFLER** ultimately agreed to go forward with **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction, believing that it was the same as a home equity loan. Based on their representations about what amounted to a home equity loan, on or about November 8, 2018, **SHREFFLER** deeded the Property to Defendant **EK REAL ESTATE**. *(See Exhibit "B" – General Warranty Deed with Vendor's Lien which is attached hereto and incorporated herein for all purposes.)* The Warranty Deed contained a Vendor's Lien in favor of Defendant **LENDINGONE**, who apparently had loaned to **EK REAL ESTATE** the sum of $176,250.00 to facilitate the "Sale-Leaseback" loan transaction for the Property. Upon information and belief, Defendant **EK REAL ESTATE** further executed a *Note, Deed of Trust, Commercial Security Agreement and Assignment of Rents* in favor of Defendant **LENDINGONE**.

23.     Defendant **LENDINGONE** advertises itself as a specialized mortgage lender which provides lending in all states except for Alaska, Nevada, North Dakota, South Dakota, and Utah. **LENDINGONE** is a licensed lender in four states: Arizona, Minnesota, Oregon, and Vermont. As a licensed lender, **LENDINGONE** is or should be familiar with the requirements and restrictions imposed on mortgage lenders under federal and Texas law, including those found in the Truth in Lending Act, the Texas Finance Code, and the Texas Property Code.

24.     Defendant **LENDINGONE** either did know or should have known that Defendants **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback" loan transaction with **SHREFFLER** and hundreds of other Texas citizens failed to comply with these requirements and restrictions. Nevertheless, Defendant **LENDINGONE** facilitated and enabled Defendants **EASYKNOCK** and **EK REAL ESTATE's** scheme by providing funding for a substantial portion of their improper loan transactions in Texas, including **SHREFFLER's**.

25.     As a further part of these transactions, **SHREFFLER** entered into a *Lease with Tenant Option Agreement* with Defendant, **EK REAL ESTATE**. *(See Exhibit "C" – Lease with Tenant Option Agreement which is attached hereto and incorporated herein for all purposes.)* The Lease was for an initial period of twelve (12) months at a rental rate of $26,100.00 per year ($2,175.00 per month) with the first payment being a prorated amount for November 7, 2018 through December 31, 2018, due and payable at closing on November 8, 2018.[1]

26.     The Lease was renewable for consecutive one-year terms for up to three years, and, if certain conditions were met, **SHREFFLER** could pay off the loan by "repurchasing" **EASYKNOCK's** secured interest in the Property. To do so, however, **SHREFFLER** would have to tender a payment of $178,500.00, which amount escalated on an annual basis (at a rate equal to no less than 102.5% of the prior year's amount), plus all closing costs (including, but not limited to, broker's commissions, transfer taxes, attorney's fees, and filing fees) paid by Defendant **EK REAL ESTATE**. In the interim, **SHREFFLER** was responsible for paying all Rent and Additional Rent due Defendant **EK REAL ESTATE** under the Lease.

---

[1]     The HUD statement (Ex. D) shows that **SHREFFLER** paid the initial rent payment for the period from November 8, 2018, through December 31, 2018 from the "loan" proceeds to **EK REAL ESTATE**.

27.     For the "right" to enter into a Lease for his Property, **EK REAL ESTATE** charged **SHREFFLER** $80,000.00, an amount which was deducted from the $250,000.00 alleged "Contract Sales Price." The $26,100.00 per year base rent for year one of the Lease escalated in every consecutive one-year term of the Lease. After the "Sale-Leaseback" loan transaction, **SHREFFLER** remained solely responsible for all repairs and maintenance on the Property. If Defendant **EK REAL ESTATE** paid for any repairs or maintenance, **SHREFFLER**, as the Tenant was responsible for reimbursement to Defendant **EK REAL ESTATE** as "Additional Rent."

28.     Upon information and belief, the monthly rent charged by Defendants **EASYKNOCK** and **EK REAL ESTATE** to **SHREFFLER** exceeded the rental rates in Hurst, Texas for similar properties. Indeed, Defendants **EASYKNOCK** and **EK REAL ESTATE** use a set formula (and not market rates) to charge victims of their wrongful "Sale-Leaseback" loan scheme, like Plaintiff **SHREFFLER**, monthly rent equal to approximately 0.75% of the equity amount **LENDINGONE** provided **EASYKNOCK** and **EK REAL ESTATE** at close (9% interest per year) *plus* prorated taxes and insurance for the Property. Thus, the monthly "rent" to **EASYKNOCK** was not designed based on market rates for leasing properties like **SHREFFLER's**. Rather, this monthly payment termed "rent" consisted of every amount that this transaction would cost **EASYKNOCK** on a monthly basis, monthly insurance, monthly property taxes, and monthly interest on **LENDINGONE's** loan to **EASYKNOCK** and **EK REAL ESTATE**. And **EASYKNOCK** and **EK REAL ESTATE** took security on the front end of this transaction in the form of **SHREFFLER's** entire equity value in his home, rather than just the value of the equity needed to secure the amount funded. **EASYKNOCK** and **EK REAL ESTATE** did this surreptitiously to ensure that its transaction costs would always be covered by

**SHREFFLER's** alleged retained equity in the Property, not just the equity covered by its home equity loan funding. All invoices for the rent, past due rent, and other charges came from Defendant **EASYKNOCK**.

29. Defendants never asked for, nor did they ever receive, a waiver of homestead from **SHREFFLER** in the "Sale-Leaseback" loan transaction.

30. **EK REAL ESTATE** and **EASYKNOCK** obtained an appraisal of $235,000.00 for **SHREFFLER's** Property from J. Mark Murray Real Estate Appraiser, which was signed on November 5, 2018. On the HUD Statement, dated November 8, 2018, the "Contract Sales Price" is listed at $250,000.00.

31. The Property was burdened by a solitary debt obligation that would need to be satisfied at closing out of the proceeds from the $250,000.00 "Contract Sales Price:" a mortgage balance of $112,298.94.

32. Despite having more than $130,000.00 in equity in his Property, at the closing, **SHREFFLER** received "net sales proceeds" of only $38,438.52 out of the listed $250,000.00 "Contract Sales Price." In addition to outrageous closing costs burdened upon **SHREFFLER** by Defendants, on the Settlement Statement, Defendants **EK REAL ESTATE** and **EASYKNOCK** deducted a charge of $80,000.00 as a "Tenant Option" price from **SHREFFLER's** remaining equity in the Property. *(See Exhibit "D" – HUD – Settlement Statement which is attached hereto and incorporated herein for all purposes.)*

33. In essence, Defendants stole **SHREFFLER's** property worth at least $250,000.00 for a total of only about $150,737.46 in value to **SHREFFLER** at closing (payment of $38,438.52 to **SHREFFLER** and the payment of $112,298.94 in obligations tied to the Property).

34.     At the same time, pursuant to the "Sale-Leaseback" scheme, Defendants **EK REAL ESTATE** and **EASYKNOCK** strapped **SHREFFLER** to rental payments of $26,100.00 for the first twelve months of a lease, a rental amount which escalated over each consecutive one-year period before **SHREFFLER** had the opportunity to "purchase" back the Property for the sum of $178,500.00 (which also escalated on an annual basis), *plus* all amounts paid by **EK REAL ESTATE** at closing. **SHREFFLER** was also responsible for Defendant **EK REAL ESTATE's** inflated closing costs and any other Rents or Additional Rents that were due.

35.     No disclosures were provided to **SHREFFLER** by either Defendants **EASYKNOCK** or **EK REAL ESTATE** pursuant to the Truth-In-Lending Act or the Texas Finance Code, which require the following disclosures, among others, be given **SHREFFLER** before he entered into this transaction:

     a.   Full disclosure of loan costs and terms;

     b.   The right of rescission;

     c.   Disclosing to the borrower when mortgage was reassigned;

     d.   Disclosure of the caps on high mortgage costs; and

     e.   Assessing whether the borrower had the ability to repay the loan prior to entering into the transaction with the borrower.

36.     Indeed, neither **EASYKNOCK** nor **EK REAL ESTATE** (nor **LENDINGONE**) conducted any substantive assessment of **SHREFFLER's** financial ability to repay the "loan" or to pay the monthly Rent, Additional Rent, or other amounts due under the Lease. All they did was request **SHREFFLER's** pay stubs, bank account statements, and credit reports.  Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **SHREFFLER's** income was not enough to cover rent payments prior to entering into the "Sale-Leaseback" loan transaction. Thus, Defendants knew **SHREFFLER** would be unable to pay the monthly rent and

other Lease payments, let alone qualify for another loan to regain title to his residential homestead Property.

37. Despite fully intending to repurchase the Property within a year, **SHREFFLER** fell behind on Rent after the first year on the Lease, and was being threatened with legal proceedings. At that time, he was attempting to refinance the Property and intended for the late Rent to be rolled into the refinance. **SHREFFLER** informed **EASYKNOCK** and **EK REAL ESTATE** of this plan, and they agreed to it. Additionally, **SHREFFLER** had made **EASYKNOCK** and **EK REAL ESTATE** aware that he was financially affected by the COVID-19 pandemic and had difficulty making Rent payments. **SHREFFLER** requested a hardship and rent deferral, which **EASYKNOCK** and **EK REAL ESTATE** granted on June 17, 2020, allowing him to pay the Rent in arrears over a six-month period starting in July 2020. All past due rental notices were being sent to **SHREFFLER** by Defendant **EASYKNOCK**.

38. The day after **EASYKNOCK** and **EK REAL ESTATE** sent **SHREFFLER** an email granting him a payment plan, **SHREFFLER** received a notice to vacate from **EASYKNOCK** and **EK REAL ESTATE's** attorney. On or about June 18, 2020, **EASYKNOCK AND EK REAL ESTATE** sent **SHREFFLER** a notice to vacate, informing him that he was in default of the Lease for failing to pay rent due for January, February, March, April, May, and June 2020. **SHREFFLER** was left scrambling to find another place for him and his daughter to live after **EASYKNOCK AND EK REAL ESTATE** represented to him that his COVID-19 hardship and rent deferral application was approved.

39. After receiving the Notice to Vacate, **SHREFFLER** spoke to **EASYKNOCK** and **EK REAL ESTATE's** attorney and agreed for the Property to be sold and for the amount of the past due Rent to be deducted from sales proceeds. Despite initially representing that if

**SHREFFLER** wanted to sell the Property, he could choose his own realtor, **EASYKNOCK** and **EK REAL ESTATE** insisted that **SHREFFLER** had to use their realtor and stated that the Purchase Agreement and/or Lease set forth provisions stating such.   However, no such provisions existed and when pressed further, **EASYKNOCK** and **EK REAL ESTATE** told **SHREFFLER** that he could use his own realtor, but that his realtor would have to pay 25% of his commission on the sale to **EASYKNOCK** and **EK REAL ESTATE's** broker.  As a result, **SHREFFLER** reluctantly agreed to use **EASYKNOCK** and **EK REAL ESTATE's** realtor.

40.     On or about August 13, 2020, Defendants **EASYKNOCK** and **EK REAL ESTATE** sold the Property for $244,000.00. Contrary to their representations to **SHREFFLER**, Defendants **EASYKNOCK** and **EK REAL ESTATE** used their own realtor and set their own sale price for the Property. **EASYKNOCK** and **EK REAL ESTATE**'s realtor encouraged **SHREFFLER** to accept the first offer received for the Property, and **SHREFFLER** felt pressured to do so, so he agreed, despite the Property being initially valued at $250,000.00 in the "Contract Sales Price."

41.     Following the sale of the Property, Defendants **EASYKNOCK** and **EK REAL ESTATE** sent **SHREFFLER** an accounting of the transaction. **EASYKNOCK** and **EK REAL ESTATE's** accounting indicated that they deducted the Option Exercise Price—$182,963.00— from the sales proceeds in the same amount that **SHREFFLER** would have had to pay to "purchase" back the Property for himself.   In addition, **EASYKNOCK** and **EK REAL ESTATE** deducted all closing costs—including their realtor's sales commission—outstanding Rent, and a Seller Credit in the amount of $4,980.00.  Out of the sales proceeds, **SHREFFLER** received only $27,318.32.

## SUIT TO QUIET TITLE TO THE PROPERTY

42.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

43.     Plaintiff **SHREFFLER** was the fee simple owner of the Property which was his homestead prior to the sale-leaseback transaction made the subject of this suit. Section 41.006 of the Texas Property Code, states as follows:

 (a) Except as provided by Subsection (c), any sale or purported sale in whole or in part of a homestead at a fixed purchase price that is less than the appraised fair market value of the property at the time of the sale or purported sale, and in connection with which the buyer of the property executes a lease of the property to the seller at lease payments which exceed the fair market rental value of the property, is considered to be a loan with all payments made from the seller to the buyer in excess of the sales price considered to be interest subject to Title 4, Finance Code.

 (b) The taking of any deed in connection with a transaction described by this section is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and the deed is void and no lien attaches to the homestead property as a result of the purported sale . . .

44.     Although, Defendant **EK REAL ESTATE** claimed that it was purchasing **SHREFFLER's** property for $250,000.00, **SHREFFLER** only received the sum of $38,438.52 from those "sales" proceeds and executed a *Lease with Tenant Option* leasing back the Property at a rental rate that exceeded similar properties in Hurst, Texas, especially given the condition the Property was in at the time of the "pretend sale" and leaseback. Thus, **EK REAL ESTATE** "purchased" **SHREFFLER's** property for far less than the appraised market value at the time of the purported sale, and all payments made (and charges debited) from the **SHREFFLER** to **EK REAL ESTATE** and **EASYKNOCK** in connection with the leaseback far exceed the fair market rental value of the Property. For these reasons, the "sale-leaseback" transaction is deemed a loan under the Texas Property Code, all payments made from **SHREFFLER** to **EK REAL ESTATE** and **EASYKNOCK** in excess of the sales price are considered interest subject to the

Texas Finance Code, the deed conveyed as part of the transaction is **VOID** and no lien ever legally attached to **SHREFFLER's** homesteaded Property.   At the time of the transaction, Defendant **EK REAL ESTATE** borrowed from Defendant **LENDINGONE** the sum of $176,250.00 and **LENDINGONE** filed a Deed of Trust against Plaintiff **SHREFFLER's** Property. As a result, Plaintiff **SHREFFLER** seeks to quiet title to the Property voiding the *General Warranty Deed with Vendor's Lien* given to Defendant, **EK REAL ESTATE** and the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE.** Given that this is an impermissible transaction under § 41.006 of the Texas Property Code requesting the Court find that Defendants **EK REAL ESTATE** and **LENDINGONE** have no interest, legal, equitable or otherwise to his Property and that Plaintiff **SHREFFLER** is the rightful owner of the Property.

## DECLARATORY JUDGMENT

45.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

46.     Plaintiff **SHREFFLER** is entitled to declaratory relief under the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code. Plaintiff seeks the following declarations:

      a.  That Defendants **EK REAL ESTATE, EASYKNOCK** and **LENDINGONE** have no rights, title or ownership interest in the Property; and

      b.  That the General Warranty Deed with Vendor's Lien executed by **SHREFFLER** on November 8, 2018 is void as a matter of law;

      c.  That the Deed of Trust given by Defendant **EK REAL ESTATE** to Defendant **LENDINGONE** is void; and

      d.  That **SHREFFLER** is the rightful owner of the Property.

e. the Property at issue in this dispute was **SHREFFLER's** residential homestead;

f. because the Property was **SHREFFLER's** residential homestead, any transaction associated with the Property required compliance with the Texas Property Code, including the restrictions of Tex. Prop. Code § 41.006 (a) and (b);

g. Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE's** taking of a deed in connection with the Sale-Leaseback transaction at issue in this case is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code (Tex. Bus. & Com. Code § 17.41, *et seq.*);

h. Defendants' deed in connection with the underlying Sale-Leaseback transaction is void and no lien legally attached to **SHREFFLER's** residential homestead property (the Property) as a result of the purported sale;

i. The Sale-Leaseback transaction at issue in this case is a "loan" under the Texas Finance Code, *see* Tex. Fin. Code § 341.001(9) and (10), and is subject to the requirements of Texas Finance Code § 342.001, *et seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

j. The Tenant Option, Rent, and Additional Rent is considered interest under the Texas Property Code.

47.     Plaintiff has retained the law firms of Robin M. Ziek, Pogach PLLC, and Feldman & Feldman, P.C. to represent him in this action and have agreed to pay the foregoing attorneys their reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fee in the amount of at least $100,000.00 or an amount as determined by the trier of fact to Plaintiff would be equitable and just and, therefore, authorized by § 37.009 of the Tex. Civ Prac. & Rem. Code.

## VIOLATIONS OF THE TRUTH IN LENDING ACT

48.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

49.     Plaintiff **SHREFFLER** is a natural person.

50.     At all times relevant hereto, Defendants **EASYKNOCK** and **EK REAL ESTATE** regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendants a creditor within the meaning of the TILA, 15 U.S.C. § 1602(g) and Regulation Z § 226.2(a)(17). Under Texas law, a sale-leaseback transaction, like the one at issue in this case, is a "loan." *See* Tex. Fin. Code § 341.001(9) and (10).

51.     The transaction in question is a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z § 226.2. The security for the transaction is the primary dwelling of **SHREFFLER**.

52.     Defendants **EASYKNOCK** and **EK REAL ESTATE** did not provide to Plaintiff **SHREFFLER** a Truth In Lending Disclosure statement and as a result violated the requirements of the Truth In Lending Act in the following ways, among others:

    a.  By failing to provide the required disclosures prior to the consummation of the transaction in violation of 15 U.S.C. §§ 1638(b) and 1639, and Regulation Z § 226.17(b);

    b.  By failing to make the required disclosures clearly and conspicuously in writing in violation of 15 U.S.C. §§ 1632(a) and 1639, and Regulation Z § 226.17(a);

    c.  By failing to include in the finance charges certain charges imposed by Defendants payable by Plaintiff incident to the extension of credit as required by 15 U.S.C. § 1605 and Regulation Z § 226.18(d);

    d.  By failing to calculate and disclose finance charges on the amount financed per 15 U.S.C. § 1606 and Regulation Z § 226.22;

    e.  By failing to disclose that **SHREFFLER** had a right of rescission;

    f.   By failing to disclose to **SHREFFLER**: "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan," as per 15 U.S.C. § 1639; and

    g.   By failing to meet the minimum standards for residential mortgage loans per 15 U.S.C. § 1639c, including the ability to repay standards and the prohibition on arbitration agreements in connection with **SHREFFLER's** principal dwelling.

53.    By reason of the aforesaid violations of the TILA and Regulation Z, Defendants are liable to Plaintiff **SHREFFLER** in the amount of twice the finance charge, actual damages to be established at trial, attorney's fees and costs, and any other amounts provided for under 15 U.S.C. § 1640.

## TEXAS DECEPTIVE TRADE PRACTICES

54.    Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

55.    Plaintiff is a consumer under the Texas Deceptive Trade Practices Act ("DTPA") because Plaintiff is an individual who sought goods or services by purchase/lease.

56.    Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts that Plaintiff relied on to Plaintiff **SHREFFLER's** detriment. Specifically, Defendants violated the DTPA, among others, as follows:

    a.   Representing that an agreement confers or involves rights, remedies, or obligations that it does not or that are prohibited by law.

    b.   Failing to disclose information about goods and services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

    c.  Causing confusion or misunderstanding about the source, sponsorship, approval or certification of goods or services by another.

57.    More specifically, as described throughout this Complaint:

    a.  The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

    b.  Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so. Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit; the Sale-Leaseback loan transaction was like a home equity loan; **SHREFFLER** would receive more than $42,500.00 in cash at closing; **SHREFFLER** would maintain his 32% interest in the equity of his Property after the Sale-Leaseback loan transaction; if **SHREFFLER** decided to sell the Property, he could choose his own realtor.

    c.  Defendants made additional false, deceptive, and material representations in their marketing materials. As described above, Defendants' marketing materials described their Sale-Leaseback transaction to **SHREFFLER** as an opportunity to "access" or "release" the equity in his home, that **SHREFFLER** could "stay in [his] home," save on having to pay insurance and taxes while he lived in his home, and "move when [**SHREFFLER**] [is] ready."

    d.  Defendants also falsely represented that **SHREFFLER** would not have to pay insurance or taxes for his Property after the Sale-Leaseback of the Property. Unbeknownst to him, Defendants were passing through those charges to him on a monthly basis as part of the rent charged for his Property.

    e.  As described above, Defendants falsely represented to **SHREFFLER** that he would maintain a 32% share of the equity in his Property, that he could choose his own realtor when he decided to sell his own Property, and that he would receive an additional amount of $87,938.00 if/when **SHREFFLER** decided to move out and sell his Property.

    f.  Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for his Property.

g. Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

h. The representations and omissions were material and false.

i. Defendants made these representations or omitted material facts with the intent that Plaintiff relies on the representations or omissions.

j. Plaintiff relied on these representations and Defendants' nondisclosure.

k. **SHREFFLER** would not have entered into the transaction had Defendants disclosed facts regarding the transaction.

l. Defendants' misrepresentations and nondisclosure are a producing cause of **SHREFFLER**'s injuries.

58.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in an unconscionable action or course of action that, to Plaintiff **SHREFFLER's** detriment, took advantage of Plaintiff **SHREFFLER's** lack of knowledge, ability, experience, or capacity to a grossly unfair degree. Specifically, Defendants **EK REAL ESTATE** and **EASYKNOCK** induced Plaintiff **SHREFFLER** into entering into a "loan" transaction which was prohibited by law concerning his homestead knowing that neither Defendant was qualified as lenders with the Texas Office of Consumer Credit Commission to lend against Plaintiff **SHREFFLER's** homestead. Defendants **EK REAL ESTATE** and **EASYKNOCK** knew or should have known that **SHREFFLER** did not have the ability to pay back the loan on the onerous lending terms and rates and at charges that exceeded the maximum rates allowed by law.

59.     Defendants **EK REAL ESTATE** and **EASYKNOCK** violated the DTPA when Defendants engaged in false, misleading, or deceptive acts or practices that Plaintiff relied upon to Plaintiff **SHREFFLER's** detriment and that violated a "tie-in" consumer statute, specifically

§ 41.006 of the Texas Property Code when Defendants induced Plaintiff **SHREFFLER** into entering into a "Sale-leaseback" transaction on his homestead. Furthermore, the marketing materials sent to Plaintiff **SHREFFLER** by Defendant **EASYKNOCK** concerning the transaction referred to "releasing" the "equity" in his home, thus confusing this type of transaction with a home equity loan.

60.   **SHREFFLER** did not discover, and through the exercise of reasonable diligence could not have discovered, the occurrence of Defendants **EK REAL ESTATE** and **EASYKNOCK's** false, misleading, and deceptive acts and practices until **EK REAL ESTATE** and **EASYKNOCK** threatened to evict him in or about June 2020—even after they had represented to him that he was allowed a Rent deferral due to COVID-19 hardships.

61.   It was impracticable for Plaintiff **SHREFFLER** to give Defendants **EASYKNOCK** and **EK REAL ESTATE** pre-suit written notice under the Texas Business & Commerce, § 17.505(a) because Plaintiff is nearing the end of his limitations period on his claim. Therefore, pre-suit written notice was not required.

62.   Defendants' wrongful conduct was a producing cause of Plaintiff **SHREFFLER's** injuries which resulted in the following damages:

> a.   Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court;
>
> b.   Defendants acted knowingly and intentionally which entitled Plaintiff to recover mental-anguish damages under the Texas Business & Commerce Code § 17.50(b)(1) in an amount to be determined by the trier of fact;
>
> c.   Defendants acted knowingly and intentionally which entitles Plaintiff to recover treble economic and mental anguish damages under the Texas Business & Commerce Code § 17.50(b)(1); and
>
> d.   Plaintiff is entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code § 17.50(d) in an amount to be determined by the trier of fact.

## USURY UNDER THE TEXAS FINANCE CODE

63.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

64.     On or about November 8, 2018, Defendants **EK REAL ESTATE** and **EASYKNOCK** loaned money to Plaintiff **SHREFFLER** disguised as a "Sale-Leaseback" loan transaction. The loan between **SHREFFLER** and Defendants **EASYKNOCK** and **EK REAL ESTATE**, in which **LENDINGONE** participated, only provided **SHREFFLER** with $38,438.52 in cash and another $112,298.94 to pay off mortgages on the Property. Defendants **EK REAL ESTATE** and **EASYKNOCK** had the Property appraised to look like a $250,000.0 sale to them from **SHREFFLER**. From a purported sale of the Property for the sum of $250,000.00, Plaintiff received a total value of $150,737.46. Disguised as a Tenant Option price on the HUD form, Defendants **EK REAL ESTATE** and **EASYKNOCK** took a $80,000.00 fee and other fees against the sales price.

65.     Plaintiff **SHREFFLER** had an obligation to repay the principal amount of Defendants' loan as seen in the option to repurchase the Property.

66.     Defendants **EK REAL ESTATE** and **EASYKNOCK** contracted for and received interest that exceeded the maximum amount allowed by law by charging excessive fees including without limitation to the following:

   a.   Tenant Option - $80,000.00;

   b.   Processing Fees of $5,000.00;

   c.   Lease Payments of $26,100.00 in the first year;

   d.   Lease Payments of at least $26,752.50 in the second year;

   e.   Lease Payments of at least $27,421.31 in the third year;

    f.  The difference between the amount received by Plaintiff for (or were satisfied by) the loan of $150,737.46 and the repayment option of $178,500.00 if repurchased within the first twelve months, at least $182,962.50 if repurchased within twenty-four months and at least $187,536.56 if repurchased within thirty-six months plus closing costs and rents; and

    g.  Excessive closing costs.

67.    Defendants' unlawful conduct cause injury to Plaintiff **SHREFFLER** which resulted in the following damages:

    a.  Statutory Penalties; and

    b.  Attorney's fees.

68.    Plaintiff **SHREFFLER** seeks unliquidated damages within the jurisdictional limits of this Court.

69.    Plaintiff **SHREFFLER** is entitled to recover statutory penalties under Texas Finance Code § 305.001(a), that being the greater of the following:

    a.  Three times the amount by which the interest contracted for, charged, or received exceeds the maximum amount of interest allowed by the usury statute; or

    b.  $2,000.00 or 20% of the principal, whichever is less.

70.    In addition, since the interest charged and received under this contract exceeded twice the amount allowed by law, Plaintiff **SHREFFLER** is seeking the forfeiture of all principal, interest and other amounts charged and received pursuant to Tex. Fin. Code § 305.002.

71.    Plaintiff **SHREFFLER** is further entitled to recover reasonable attorney's fees under Texas Finance Code § 349.001 against Defendants **EK REAL ESTATE** and **EASYKNOCK**. Plaintiff has hired the undersigned attorneys to represent his interests in this matter and have agreed to pay the attorneys a reasonable rate for their services. Plaintiff

**SHREFFLER** seeks to recover his reasonable and necessary attorney's fees from Defendants, jointly and severally, in this matter in an amount as determined by the trier of fact.

## ADDITIONAL VIOLATIONS OF TEXAS FINANCE CODE GOVERNING LOANS AND FINANCED TRANSACTIONS §§ 341.011– 354.007, *et seq.*

72.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

73.     At all times relevant hereto, **SHREFFLER** is considered an "obligor" under the Texas Finance Code and Defendants **EASYKNOCK** and **EK REAL ESTATE's** "Sale-Leaseback transaction is a "loan" under the Texas Finance Code. *See* Tex. Fin. Code § 341.001(9) and (10). This loan transaction was subject to the requirements of Texas Finance Code § 342.001, *et seq.* (Consumer Loans) and § 343.001, *et seq.* (Home Loans).

74.     In connection with the loan transaction at issue in this case, Defendants **EASYKNOCK** and **EK REAL ESTATE** violated the Texas Finance Code, among other ways, by:

   a.  engaging in the business of making, transacting, or negotiating loans subject to this chapter without holding a license issued under this chapter, Tex. Fin. Code § 342.051;

   b.  failing to make required disclosures, Tex. Fin. Code § 343.102;

   c.  failing to provide required notices, Tex. Fin. Code § 343.105; and

   d.  engaging in a pattern or practice of extending credit to consumers under high-cost home loans based on the consumers' collateral without regard to the obligor's repayment ability, including the obligor's current and expected income, current obligations, employment status, and other financial resources, other than the obligor's equity in the dwelling that secures repayment of the loan, Tex. Fin. Code § 343.204.

75.    For violating these additional provisions of the Texas Finance Code, pursuant to Tex. Fin. Code. § 349.003, Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to **SHREFFLER** for (1) three times the actual economic loss to **SHREFFLER** that resulted from each violation; or, alternatively, (2) since each violation was material and induced **SHREFFLER** to enter into a transaction that he would not have entered if the violation had not occurred, twice the interest or time price differential contracted for, charged, or received, not to exceed $4,000 because the amount financed exceeds $5,000. Defendants are also liable for **SHREFFLER's** reasonable attorney's fees in an amount to be determined by this Court.

## COMMON LAW AND STATUTORY FRAUD

76.    Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

77.    Defendants **EASYKNOCK** and **EK REAL ESTATE** are liable to Plaintiffs for common law fraud, fraud by nondisclosure, fraudulent inducement, and, pursuant to Tex. Bus. & Com. Code § 27.0, statutory fraud.

78.    Specifically, as described throughout this Complaint:

a.    The Sale-Leaseback loan transaction is a transaction that involves real property in Texas, namely the Property.

b.    Defendants **EASYKNOCK** and **EK REAL ESTATE** made multiple misrepresentations, and they concealed or failed to disclose facts to Plaintiff despite a duty to do so. Among other things, as described more specifically above, **EASYKNOCK** and **EK REAL ESTATE** falsely and misleadingly represented that they were authorized under Texas law to enter into the loan transaction that is the basis of this suit; the Sale-Leaseback loan transaction was like a home equity loan; **SHREFFLER** would receive more than $42,500.00 in cash at closing; **SHREFFLER** would maintain his 32% interest in the equity of his Property after the Sale-Leaseback loan transaction; if **SHREFFLER** decided to sell the Property, he could choose his own realtor.

c. Defendants made additional false, deceptive, and material representations in their marketing materials. As described above, Defendants' marketing materials described their Sale-Leaseback transaction to **SHREFFLER** as an opportunity to "access" or "release" the equity in his home, that **SHREFFLER** could "stay in his home," save on having to pay insurance and taxes while he lived in his home, and "move when [**SHREFFLER**] [is] ready."

d. Defendants also falsely represented that **SHREFFLER** would not have to pay insurance or taxes for his Property after the Sale-Leaseback of the Property. Unbeknownst to him, Defendants were passing through those charges to him on a monthly basis as part of the rent charged for his Property.

e. As described above, Defendants falsely represented to **SHREFFLER** that he would maintain a 32% share of the equity in his Property, that he could choose his own realtor when he decided to sell his own Property, and that he would receive an additional amount of $87,938.00 if/when **SHREFFLER** decided to move out and sell his Property.

f. Defendants made these misrepresentations and concealed/failed to disclose facts to induce Plaintiff to enter into the Sale-Leaseback transaction for his Property.

g. Defendants knew Plaintiff was unaware of the concealed/undisclosed facts and did not have an equal opportunity to discover these facts. Defendants were deliberately silent when they had a duty to speak about the concealed/undisclosed facts.

h. The representations and omissions were material and false.

i. Defendants made these representations or omitted material facts with the intent that Plaintiff rely on the representations or omissions.

j. Plaintiff relied on these representations and Defendants' nondisclosure.

k. In relying on these representations and without the knowledge of the undisclosed facts, Plaintiff **SHREFFLER** was injured.

79.    For the common law fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from Defendants **EASYKNOCK** and **EK REAL ESTATE,** his actual damages, exemplary damages, costs of court, and pre-and post-judgment interest.

80.     For his statutory fraud claims, Plaintiff seeks and is entitled to recover, jointly and severally from the Defendants **EASYKNOCK** and **EK REAL ESTATE**, his actual damages, and, pursuant to Tex. Bus. & Com. Code § 27.01(d) and (e), exemplary damages, attorney's fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## CONSPIRACY

81.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

82.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **SHREFFLER** for participating in a conspiracy.

83.     Each of the Defendants was a member of a conspiracy. They conspired to commit acts of fraud and other statutory and common law torts, as described above. In so doing, the Defendants had a meeting of the minds to accomplish the wrongful acts described above, committed one or more acts in furtherance of the conspiracy to commit the unlawful causes of action described above and caused Plaintiff actual harm as a result of their conspiratorial conduct.

84.     Accordingly, Plaintiff is entitled to recover from each conspirator Plaintiff **SHREFFLER's** actual damages and exemplary damages, as well as for such conspirator's joint and several liability with the other actors concerning each cause of action described above. In connection, with the statutory torts, **SHREFFLER** is entitled to recover from each conspirator, jointly and severally, his attorney's fees, expert witness fees, deposition-copy costs, costs of court, and pre-and post-judgment interest.

## AIDING AND ABETTING

85.     Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

86.     Defendants **EASYKNOCK**, **EK REAL ESTATE**, and **LENDINGONE** are liable to Plaintiff **SHREFFLER** for aiding and abetting one or more of the others in the conduct described in this Complaint.

87.     Specifically, as described throughout this Complaint:

    a.  Each Defendant committed torts;

    b.  Each Defendant had knowledge that these primary actors' actions constituted torts;

    c.  the Defendants had the intent to assist these primary actors in committing the torts;

    d.  each of the Defendants gave the primary actors assistance or encouragement; and

    e.  the assistance or encouragement provided by the Defendants was a substantial factor in causing the tort.

88.     Alternatively, as described throughout this Complaint:

    a.  the primary actors' activity accomplished a tortious result;

    b.  each of the Defendants provided substantial assistance to the primary actors in accomplishing the tortious result;

    c.  each of the Defendants' own conduct, separate from the primary actors', breached duties owed to Plaintiff; and

    d.  the participation of each Defendant was a substantial factor in causing the tort.

89.     Plaintiff is entitled to recover damages from each of the Defendants, jointly and severally, for each cause of action they aided & abetted.

## VIOLATIONS OF THE FAIR DEBT COLLECTION ACT

90.   Plaintiff **SHREFFLER** adopts all preceding paragraphs as if recited verbatim herein.

91.   At all relevant times, **SHREFFLER** is a "consumer" and Defendants **EASYKNOCK** and **EK REAL ESTATE** are each a "creditor," as those terms are defined in 15 U.S.C. § 1692a.

92.   Under 15 U.S.C. § 1692, *et seq.*, Defendants **EASYKNOCK** and **EK REAL ESTATE** were prohibited from using an unfair or unconscionable means to collect or attempt to collect any "debt," as that term is defined therein, allegedly owed by **SHREFFLER**.

93.   Among other things, Defendants **EASYKNOCK** and **EK REAL ESTATE** are prohibited from the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. 15 U.S.C. § 1692f. Defendants **EASYKNOCK** and **EK REAL ESTATE** are further prohibited from falsely representing the character, amount, or legal status of any alleged debt. 15 U.S.C. § 1692e.

94.   As described above, Defendants **EASYKNOCK** and **EK REAL ESTATE** sold **SHREFFLER's** Property on August 13, 2020. Yet, Defendants **EASYKNOCK** and **EK REAL ESTATE** sent demand to **SHREFFLER** on August 15, 2021 for payment of rent associated with a Lease since terminated for a Property that **SHREFFLER** has vacated and sold.

95.   Pursuant to 15 U.S.C. § 1692k, Plaintiff is entitled to recover damages from Defendants **EASYKNOCK** and **EK REAL ESTATE**, jointly and severally, his actual damages sustained in connection with their violations or such additional damages as the Court may allow, but not exceeding $1,000 for each such violation.

## JURY DEMAND

96.     Plaintiff **SHREFFLER** demands trial by jury.


## PRAYER

Plaintiff **LESTER SHREFFLER** prays that the Court enter Judgment in favor of **LESTER SHREFFLER** jointly and severally against Defendants **EK REAL ESTATE SERVICES OF NY, LLC**, an Affiliate of **EASYKNOCK, INC., EASYKNOCK, INC.,** and **LENDINGONE, INC.,** for the damages as set forth herein and for such other and further relief, in law or at equity, to which he may be justly entitled.

Dated: October 28, 2021.

Respectfully submitted:

By: /s/ Robin M. Ziek
  Robin M. Ziek
  Attorney at Law
  State Bar No.: 22262575
  24 Greenway Plaza, Suite 2050
  Houston, Texas 77046
  Telephone: (713) 222-8030
  Facsimile: (832) 565-9011
  rziek@sbcglobal.net

  POGACH PLLC

By: /s/ Adam D. Pogach
  Adam D. Pogach
  State Bar. No.: 24048734
  24 Greenway Plaza, Suite 2050
  Houston, Texas 77046
  Telephone: (713) 524-5400
  Facsimile: (713) 524-5401
  adam@lawdifferent.com

  FELDMAN & FELDMAN, P.C.

By: /s/ Cris Feldman
  Cris Feldman

State Bar. No.: 24012613
3355 W. Alabama St, 1220
Houston, Texas 77098
Telephone: (713) 986-9471
Facsimile: (713) 986-9472
cris.feldman@feldman.law

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: _____/s/ Cory Halliburton_____
Cory Halliburton
State Bar. No.: 24041044
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
Telephone: (817) 795-5046
Facsimile: (866) 248-4297
challiburton@wkpz.com

**ATTORNEYS FOR LESTER SHREFFLER**